May it please the Court, Davina Chen on behalf of Ceasar Rodriguez. I'd like to try to reserve two minutes for rebuttal. This appeal raises three sets of issues, a breach issue, a judicial participation in plea discussions issue, and several sentencing issues. I'd like to start with the breach issue, and then if I have time, turn to the sentencing issues. The government breaches its plea agreement when it refuses to defend the agreement to the Court and makes statements whose only purpose is to encourage the Court to reject the plea agreement and to impose a higher sentence. There were a lot of statements that the prosecutor made that were helpful to you. I'm looking at the appendix at ER 20, and there the prosecutor is talking about the fact that all the stuff with the guns was really the fault of the other co-defendant, and the other co-defendant had a worse record, and the co-defendant was the one who was responsible for trying to get away and so forth. And since the co-defendant had gotten a much lower sentence on a more serious charge, why wasn't that a strong defense of the plea agreement? I think that actually was just answering the Court's questions as to whether or not this particular defendant could have been charged with a felon in possession, whether he was responsible for it. The judge asked, you know, the judge said, well, the PSR says that if he had been convicted of the felon in possession, that would be 84 to 105. Did you ever consider charging him with that? So that was required, you know, and candid to the Court, because my client, in fact, did not possess firearms. But when the judge asked the prosecutor specifically to defend the plea agreement, to say, is there anything that you can say that would get me to accept this plea agreement, she did two things. She first mischaracterized what the plea agreement even called for. She then said, I really can't say anything for or against the plea agreement, when, of course, the plea agreement required her to say things for the plea agreement and prohibited her from saying things against it. And then third, what it did, she did was basically agree with the Court that given the unduly lenient sentence in State court, that the plea range was probably too low. There was really no reason to make that statement except to communicate to the judge that she agreed with the judge that the sentence was too low. And under the Ninth Circuit's case law, when the prosecutor says something that has absolutely no purpose but to encourage the judge to impose a sentence higher than is contemplated by the plea, that is a clear breach. This is a sort of unusual case because the breach came when the judge ---- Scalia. The prosecutor is obligated, even when there's a plea agreement, to answer the judge's questions, yes? Saharsky. Yes, absolutely. Scalia. Answer them honestly. Saharsky. Yes. So the question here was, is there anything that you can say that would, you know, that would persuade me to change my mind? So it would have been an honest answer to say, for instance, since I want a consecutive sentence, I agree that the State sentence was too low, that's why we've reserved the right to argue for a consecutive sentence. But we have agreed that a sentence within 21 to 30 months is appropriate for this case, and we encourage the Court to accept it. That would be ---- Can you point to where in the plea agreement it says that the prosecutor has to argue for it and not just argue against it? You know, the plea agreement is a little bit of an odd plea agreement. So on page 7, though, it's ---- I meant not argue against it, but anyway, yes. Right. Okay. So that's ---- well, of course, I mean, a plea agreement would be illusory if the prosecution would be permitted to argue against it. Right. No, I understand they can't argue against it, but where does it say they have to argue for it? Okay. On page 7, the parties agree that the sentencing range, these are appropriate. So I think that construed against the drafter, that means they have to argue for it. But there are plea agreements that say both sides will support this agreement or have other words that suggest that the prosecutor is agreeing to support or argue for it. And this one seems different to me. It doesn't say that. This is an 11C1C, and in 11C1C, what the government agrees to is to argue that or to take the position that this is an appropriate disposition of the case. And so ---- What did they say that said they ---- that suggested they thought it was not appropriate? I think that the worst thing it said, really, was on page 25, when it said, with respect to the State, I think the State did it completely wrong, especially with the charges that he was looking at and just how serious they were to run the two concurrent and wrap them up. But other than that, I can't fix what the State did, and other than that, I can't argue for or against you accepting or rejecting this plea agreement.  And so what is saying ---- what does that convey that's arguing against this? It says I can't argue for or against. Well, it can't argue against, but it absolutely can argue for. And what it's conveying is that it feels that the State got it completely wrong. And there was absolutely no reason to communicate to the Court that the State got it completely wrong when the Court has already just said, I'm going to give an above guideline consecutive sentence. So the sentencing position paper, the Court ---- the government made it perfectly clear they wanted a consecutive sentence. They just wanted ---- So, I mean, you have another argument that the Court shouldn't have considered the State sentence. But that's ---- isn't that a different point than whether they're arguing for what the Federal sentence should be? Absolutely. No, I don't think so at all, because what the government ---- what the Court was saying, basically, when the Court was saying this sentence is too low, is that in light of the sentence that was received in the State sentence, this sentence was too low. Because, you know, the first thing the judge asked was, was he a felon of possession? And the government correctly said, no, he wasn't a felon of possession. And then the Court said, well, looking at his history ---- They really did more than that. I mean, they pointed out substantial differences between the other, the co-defendant and your client. And so what is it that required them later to go back and say, Judge, I want to remind you what I told you less than five minutes ago, which is the great difference between this guy and the other guy? Well, I don't think that he was actually ---- she was required to do that. I'm not complaining that she didn't say, oh, you know, the other guy was much worse. It is interesting, though, that she told the judge that the other guy got four years, which was not accurate. The guy got 27 months. That was interesting. I'm not arguing ---- The judge presumably had those facts before because she ---- it would have been in the pre-sentence report, and there was a recent ---- there was a further hearing. So there's plenty of time to find out the ---- No. And the judge actually corrected the prosecutor, saying, actually, it was 27 months. But that's a different case, different judge. Harmlesser. Right. That is not what I'm complaining about. What I'm complaining about is when the judge asked, is there something that you can say that will encourage me to accept the plea agreement? When a defendant enters an 11C1C, what they've bargained for is for the government to say, what I can say is that the government believes that this is an appropriate sentence and in the interest of justice. That's what the plea agreement called for. And I think that was already said by the prosecutor. But assuming for the sake of argument that you feel that the prosecutor had to repeat that, that would have been simply a conclusory statement. What facts would the prosecutor have brought to the judge's attention that the prosecutor had not already brought to the judge's attention? The fact that the prosecutor would have brought to the court's attention is that we have considered the seriousness of the prior offense, and that is why we have permitted to ask for a consecutive sentence. But the sentence in this case should be for this offense, and the government has concluded that it is in the interest of justice and appropriate for the sentence for this case to be between 21 and 30 months. Instead, she said, we didn't agree to a below-guide sentence. I can't argue for or against it. And in the government's own brief on page 13, they make it clear that the plea agreement allowed them to argue whatever they wanted to as long as it was in favor of the plea agreement. Here, she said, I can't argue for or against it, and then she implicitly argued against it, because after the judge had sort of ticked off the things that made the judge feel uneasy with the plea agreement, the final thing the judge landed on was this State case where he got this unduly lenient sentence. And what the prosecutor said was basically, I agree with you. He received an unduly lenient sentence in that State case. And the Court can and implicitly should consider that. But as Judge Friedland just pointed out, isn't that really your argument about what you think was the mistake by the judge, which is basing her sentence in substantial part on her disagreement with the State sentencing decision, which is not a permitted factor? Isn't that really the heart of that problem? I think they absolutely go together. Because the Court considered that the reason why a higher sentence was warranted, the government was obligated not to say, I agree, that's a reason why the higher sentence is warranted. I see I've used up all my time and I haven't even started my sentence. I'll give you a little bit of time for rebuttal. I have one question for you, because I'm inclined to think that you're right, that there was a breach, but because this is plain error review, I guess I still find myself running into a roadblock, which is, as I understand our cases, they say that your burden is to show that had the government said this little thing that you wanted them to say, that there's a reasonable probability that the district court would have accepted the plea agreement. And I guess I just don't see any probability that the district court would have accepted the agreement. Okay. That's sort of a couple of things. First, I don't think it's a little thing. To stand up and say we support, we negotiated this agreement in good faith and we do believe it and we stand by it, I don't think it's a little thing. In fact, this Court's cases say that what the defendant bargains for is a united front, and there was no united front here. But I think that in this case, it's unusual in that the Court was actually asking the prosecutor, is there something that you can say that would change my mind? But that's why I'm saying it's a little thing. What you're proposing the government would have said is a little thing here, because you, and I know what the government was, I mean, what the district court was asking is, look, I have the pre-sentence report. I see everything that you guys apparently looked at in figuring out that 21 to 30 was okay. Is there something I don't know about that you guys haven't told me that's not in the four corners of this pre-sentence report? And what this Court held in Whitney, which was also a plain-error case, is that given that this Court recognizes that the united front is something that's important that you, that a defendant bargains for, that there's a reasonable probability that if the prosecutor unequivocally endorses the agreement, that it will make a difference. But let me add one more thing. And I see that I'm over my time. If this Court finds that there was a breach, but doesn't find that it affected substantial rights, which I would like to use my rebuttal time to argue that it does, I still think that if this Court finds sentencing error, including the guideline error, it still needs to reassign. Because this Court's cases are clear that once there's a breach, all further proceedings before that same judge are tainted by the breach. So even if this Court were to find a breach and not find that it must reverse based on this breach, if it reverses for sentencing error, including conceded sentencing error in the calculation, the Court should still reassign. So if there's a breach, are you – so is the remedy you want for a breach just resentencing, or do you want to get out of the plea agreement? What are you trying to ask for here for the – if you – if we agree with you on the breach? It's reassignment for the government to advocate for the plea agreement before a different judge, which is what this Court said in Iredia is the appropriate remedy for a breach of an 11c1c plea agreement. You just said something else, though, which I don't understand at all. You said that if we were to reverse on the ground that the guideline calculation was inaccurate, that we would have to reassign to a different judge. Can you cite any case for that? In Iredia, this Court makes very – well, it starts with Santobello, where the Supreme Court says, and I understand the Second Circuit's law is a little bit different, but the Ninth Circuit interprets Santobello to say that when there's a breach, even if it's harmless, if you're asking – if it goes back, it has to be before a different judge. In Iredia, the Ninth Circuit sort of chastises trial counsel for asking for the wrong remedy in that case. In Iredia, there was a breach, and the defense lawyer says the Court has to follow the plea agreement. And the Ninth Circuit says, no, that's not the remedy for a breach. The remedy for a breach is that you reassign and you order the government to do what it was asked to do. And it says – and the reason for that is not because we blame the judge for it. But I'm just focusing not on the breach. I'm focusing on just the – if the guideline calculation was – if the only reason a case is reversed is because of a mistake in the guideline calculation, you're saying that under Ninth Circuit law – and I don't give a darn about the Second Circuit. It's the Ninth Circuit I care about. If the – that you say under Ninth Circuit law, it has to go back to a different judge? No. I'm sorry if I've – if I've misspoke. And what I'm saying is that if the Court finds a breach but does not reverse based on the breach, reverses based on the guideline error, it needs to be reassigned because the judge has already been contaminated and tainted by the breach. And under Ninth Circuit law, in Arredia, it makes it very clear that any further proceedings before that judge are tainted by the breach. So this is if you win on the breach but we find it's not plain error and you win on the guidelines calculation. Yes. That's how you get there. Yes. Okay. We'll give you a couple minutes for questions. I'm sorry. Thank you. No need to apologize. All right. Let's hear from the government. Good morning, Your Honors. I'm Erica McCallum. I'm here from the District of Arizona and I'm representing the government. Turning first to the breach question, the – what's clear here is the government complied with the plea agreement. They – government made a recommendation for a sentence that was below the top of the plea agreement at 28 months consistent with the Probation Office's recommendation. The only argument the government made was that this case warranted a consecutive sentence. And the reason for that was that the defendant had been on this crime spree for a series of months and the government was concerned that if he was given a sentence that was consecutive to the State sentence, the message it was sending to him was additional crimes don't really have – You mean concurrent? Concurrent to the State sentence? I'm sorry. Yes, concurrent. Thank you. Additional crimes don't have any consequences for you. And the message, you know, would not deter others. So – Why couldn't the prosecutor argue if something for the agreement? The prosecutor said, I can't argue for or against. And your opponent is right. Certainly couldn't argue against. But why couldn't our prosecutor argue for? I have to take a moment to get to the point, to the answer to your question. Because I think we have to look at that hearing in context. And what happened was the moment the court came onto the bench, she said, I'm – I've reviewed the pre-sentence report. I think this defendant's criminal history is severely underrepresented. He's very dangerous. I'm rejecting the plea range. I intend to impose an above-guideline sentence, irrespective of the guideline calculation. So that put the parties in a position of the courts giving us notice under the plea agreement, under an 11C, that she's rejecting the plea agreement. Well, but then, of course, yes, yes, yes. But, of course, I mean, I know you want to get to the windup. But the fact is the judge at some point in the hearing, a little bit later, said, hey, I mean, maybe I'm missing something here. So, you know, you, the government, gosh, you guys looked at the same information that I've got before me, and you apparently thought 21 to 30 was adequate. What am I missing? Is there something, you know, that I don't know about that you can tell me? And that's when the response is, well, I can't argue for or against this, Your Honor. And that strikes me as a plain breach of the, at least the implicit obligation that the government took on once it signed on to this deal. What the court was asking was, is there something behind this plea agreement besides guideline calculation? In other words, is there an evidentiary issue? Was there cooperation? Is there some sort of litigation risk? But couldn't the prosecutor then have said, no, there are no other facts? But the prosecutor was wrong, right, to say, I can't argue for the agreement. I mean, that's just a misstatement, isn't it? Well, the government did say there are no other facts, and so did the defense counsel. They both said, we really have nothing to add. Yes, it was not the best articulation for the government to say I can't argue for or against. But what the law is in this circuit is, and we're looking here at the Gonzales-Aguilar case, which is the government can't, you know, give a wink and a nod in support of the plea agreement while making an inflammatory argument against the plea agreement. And that's not what happened here. There's not an obligation for the government to say, court, you've decided to reject the plea agreement. I'm urging you to stay within the plea agreement. So, because I'm not sure I share the view that there was a breach, but it seemed to me from this record that what the government was saying, but they said it earlier, was the reason we gave the deal we did is because the facts of what he actually did in this actual case were very much less than the coloration that arises from what his, from Mr. Ramirez, I guess it was, the other guy did. And if that is, in fact, all that was behind the government's decision, other than the facts relating to consecutive that you've already mentioned, then all the facts were before the judge, yes? Yes, I agree. The facts were before the judge. One clarification that I would make is that this other defendant, Rivera, was not a co-defendant. He was charged in a separate case. My point is they grew out of the same incident. And that really leads to the question that I had, which is, I found that maybe I missed something. I didn't see any real explanation from the judge as to why she wasn't troubled by the very considerable disparity between what another federal judge had given Mr. Ramirez earlier for a much more severe conduct and what she gave here. And she was certainly aware of it because she pointed out that it was 27 months, not four years. But she's being told, and there's no dispute, that the other guy is the guy responsible for the guns and the shells. This guy is only being charged with possession of counterfeit money. The other guy has a quote, his quote, his history is even worse than this defendant. The other guy was the guy who tried to run away, in effect, by gunning the car for a while. And all she says is, well, it's a different judge, different case. But she's required under federal law to say, to take into account that kind of disparity. It's about the clearest disparity you can imagine because it arises from the very same incident. And she just says, unless I missed it, well, it's another judge, another case. Is that sufficient? Don't we have to at least find out what her basis was for that? Well, I think, and you're focusing really on the disparity between the two sentences. And I think, you know, under 3553A. That's a factor. Yes. But disparity, the purpose of looking at disparity is primarily looking at national disparity. Preventing national disparity. Where do you see that in 3553A? That's the Satern case. S-A-E-T-U, sorry, S-A-E-T-E-U-R-N. And it's 504 F3rd 1175. I'm not sure that I've included that in my briefs. But I'm happy to supplement if you need me to. I mean, I'll want to look at that case. But just thinking aloud, isn't it just the reverse? And doesn't Satern say that A6 is about national disparity, but you can consider other involved defendants under A1? Well, let me just give my quick quote there. It says, The primary goal is to promote national uniformity, not co-defendant uniformity. Looking at that case. But that doesn't say you can't consider co-defendant uniformity. Sure. Because didn't they uphold, they found it harmless or something, because you could have considered it under A1? And my time is running out. But I think the situation here is, the court looked at this other defendant and said, It's a different case. He was sentenced by a different judge. The timeline of that case was different. It was resolved before this defendant was even charged, even though it arose out of the same circumstances. The court also looked at the fact that this defendant not only had $29,000 in counterfeit money, but he also had in the seat with him an airsoft pistol, some shells, binoculars, camouflage clothing. And what was clear, and they were traveling at 2 o'clock in the morning in a remote area, was that they appeared to be on the way to some nefarious purpose, probably a drug rip. So if a fair reading of the record here is that the judge, even well aware that another person charged in the same incident, charged with much more serious offenses, who had a worse history, et cetera, was given a 27-month sentence, and assuming that the reason this judge decided to give a much higher sentence was because she disagreed with the state sentence that had been imposed earlier on this defendant, is that not error? Your Honor, I respectfully disagree with her rationale for this sentence. No, that's why I say, contrary to your arguments, but if one were to assume that, would you agree it was then error? Potentially, yes, it could be error. I'm not sure that it satisfies the plain error standard. However, what the court was looking at here was – Well, isn't it clear that it would be improper to consider the state sentence? I mean, do you mean that there might not have been an effect on the substantial rights, or do you mean that it's not clearly an error to consider the state sentence? I don't think that the court was looking at the length of the state sentence as the basis for the sentence that she fashioned for this defendant. The reason for that is what she was looking at was this spree, where he had run over his ex-girlfriend's foot with his car, an aggravated assault conviction. He had been involved in a carjacking where he impersonated a police officer involving a firearm. That was the other aggravated assault. She stated very clearly, this defendant's criminal history is severely unrepresented, and it's not just those two offenses. He had seven juvenile dispositions between the ages of 12 and 17. He had five prior felonies, including the two felonies we're talking about today. Four of those involved firearms, and one of them involved the car running over the ex-girlfriend. He had eight arrests, stemming back to the age of eight. And what she said, and I'm quoting here, the court said, he's a very dangerous person, a very aggressive person, with very, very serious, aggressive, fairly recent criminal history. And so her purposes were to deter further activity, further offenses, and to protect the public. And she did balance the aggravators, the mitigators. She did consider, obviously, the other individual's sentence, but her purpose was to deter this kind of conduct, not meaning counterfeiting, but meaning the violent, very dangerous, drug-rip, aggravated assault history. While we know that the prosecutor said that the other defendant had a worse history, the record does not reflect, even including if you decide to look at the judicially noticeable documents from this other defendant's case, it doesn't indicate what kind of criminal history he had, and it certainly doesn't indicate that he had this recent spree of sort of worsening activity that was not being deterred by prison sentences. Okay, thank you, counsel. If you have any further questions, I ask you to affirm. Thank you. Okay, let's put two minutes on the clock for defense counsel. Okay, just very briefly on the breach issue, because I don't want to beat a dead horse. What Ms. McCallum has said is that Sarah Teslukai said, I have nothing to add when the court asked for help. But that is not what the prosecutor said. She did have something to add. What she had to add was, I agree with you that the State did this thing completely wrong, and other than that, I have nothing to say. So she did add something. She does also say, though, she can't do anything about the State sentence. I mean, there is a comment. We can't – I think it's, I can't do anything about that. But there is a comment that the – The Court certainly could do something about that. But I don't want to beat a dead horse, really, because I want to try to address some of these other issues. I do agree with Judge Rakoff that when – simply saying different judge, different case doesn't come close to explaining why the defendant in this case, for less egregious conduct, gets more than twice the time. And I think it's particularly troubling when it's juxtaposed with the fact that the Court seemed perfectly willing to increase the sentence in this case based on its feeling that a truly different judge, different case was sentenced improperly. And this judge really had no information about the other case except for what was in the PSR. And what I've been noticing is that facts of that other case are even being misrepresented, not purposefully, right, but because we don't know enough. So, for instance, we've heard that my client was impersonating a police officer. But, in fact, he was a driver of that case. It was the passenger who was impersonating the police officer. Not to say that that makes a huge difference, but what I'm saying is that a judge heard that case and decided that three and a half years concurrent time was appropriate based on all the facts that that judge heard. This judge in this case not only ignores the exact same – you know, the exact same case by calling it different judge, different case, but reaches out to a State case and says, that sentence was too low. I'm going to increase it. And I disagree that it's not clear from the record that the judge was saying, I'm going to increase it to account for it. If you look at her statement of reasons, which I actually don't have. I think you filed them under seal. The Court specifically says one of the reasons for the upward variance was that there was recent aggressive conduct that was wrapped up with concurrent time in the State sentence. And that was a specific reason that the Court gave to impose a higher sentence. Thank you very much. Case just started. It will be submitted. We'll move to the next case on the – well, the next case on our calendar, United States v. Cooper, has been submitted on the briefs. So we will now call Duche, if I'm pronouncing that correctly, v. Sessions. If counsel for that case could come forward, please.
judges: Watford, Friedland, Rakoff